# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:22-mj-380
)
2014 dark blue Dodge Charger, VIN# )
2C3CDXBG1EH265182, bearing Ohio license plate )
DEUCE17 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
2014 dark blue Dodge Charger, VIN# 2C3CDXBG1EH265182, bearing Ohio license plate DEUCE17

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT A, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (a)(5) | -Transferring a Firearm to an Out-of-State Resident |
| 18 U.S.C. § 922 (a)(1)(A) | -Engaging in the Business of Dealing in Firearms Without a License |
| 18 U.S.C. § 371 | -Conspiracy |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT, incorporated here by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Teresa Petit, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime/telephone, after a PDF was submitted via electronic mail *(specify reliable electronic means)*.

Date: May 27, 2022

Elizabeth A. Preston Deavers
United States Magistrate Judge

City and state: Columbus, Ohio

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH AND SEIZURE WARRANTS | **UNDER SEAL** |
|---|---|

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Teresa J. Petit, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, deposes and states:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2014, and I am currently assigned to the Columbus, Ohio, Field Office.

3. I have participated in numerous investigations focusing on firearms trafficking, gangs, and the distribution of illegal narcotics. I have conducted covert surveillance of suspected traffickers, interviewed numerous individuals involved in gangs, the illegal firearms trade, and/or narcotic trafficking trade. I been a member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving firearms and/or illegal narcotic traffickers and violent offenders, and participated in the seizure of numerous firearms and controlled dangerous substances. Through my training, education, and experience, I have become familiar with the manner in which firearms intended for criminal use are transported, stored, and

1

resold, similar to the transportation, storage and distribution of illegal narcotics. I am also familiar with the methods of payment for such unlawful transfers of firearms and the distribution and the manner in which firearms and/or narcotic traffickers communicate with each other.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, telephone records, and reports. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this Affidavit, there is probable cause to believe that Martino D. LORENZI, (hereinafter "LORENZI"), Anthony D. REDMOND (hereinafter "REDMOND"), Charles L. JACKSON, (hereinafter "JACKSON") and others have committed violations of the following federal laws: 18 U.S.C. § 922(a)(5), that is, transferring a firearm to an out-of-state resident; 18 U.S.C. § 922(a)(1)(A), that is, engaging in the business of dealing in firearms without a license; 18 U.S.C. § 2, that is, aiding, abetting, counseling, commanding, or soliciting a criminal act; and 18 U.S.C. § 371, that is, two or more persons conspiring to commit any offense against the United States (all of the above offenses are collectively referred to throughout as the TARGET OFFENSES); and that execution of this search warrant will lead to evidence of these crimes.

6. I have not included all of the information relevant to the investigation in this Affidavit, but I do not believe that I have omitted any information that would have a tendency to defeat a showing of probable cause. To the best of my knowledge and belief, all statements made in this Affidavit are true and correct.

## PURPOSE OF THE AFFIDAVIT

7. This Affidavit is being submitted in support of an application for a warrant to search

the vehicle further described as a 2014 dark blue Dodge Charger, VIN# 2C3CDXBG1EH265182, bearing Ohio license plate DEUCE17 (hereinafter "**TARGET VEHICLE**"), that is currently located in Columbus, OH.

8. I submit pursuant to the facts set forth in this Affidavit that there is probable cause to believe that LORENZI, REDMOND, JACKSON and others are engaged in the TARGET OFFENSES and that the lawful execution of the search warrant sought herein will lead to additional evidence that LORENZI, REDMOND, JACKSON and other individuals unknown are engaged in such crime(s). The execution of a search warrant on the **TARGET VEHICLE** will aid in developing further evidence of the conspirators' firearm trafficking activities, including further establishing a pattern of LORENZI, REDMOND, JACKSON and others unknown in their firearm trafficking activities, determining meeting locations, and identifying customers and other members of the firearm distribution conspiracy, as well as their residence(s) and/or stash-house(s).

## FACTS AND CIRCUMSTANCES

9. Your Affiant has participated in the investigation of the above and below-described offenses. Based upon my own personal participation in the investigation, as well as information obtained from other law enforcement officials, I am familiar with the facts and circumstances of this investigation. Your Affiant makes this Affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation and, in part, upon information provided to me by other law enforcement officers.

10. Because this Affidavit is being submitted for the limited purpose of seeking authorization to execute a search warrant on the **TARGET VEHICLE**, I have not set forth each and every fact learned during the course of this investigation. I am not relying upon facts not set forth herein in reaching my conclusion that a warrant should be issued. Nor do I request that this

Court rely upon any facts set forth herein in reviewing this Affidavit in support of the application for a search warrant.

11. The investigation has indicated that Brian CUNNINGHAM, Mariah CUTLIP, Walter RATHBURN (W. RATHBURN), Tyson RATHBURN (T. RATHBURN), Martino D. LORENZI, and others, have committed violations of the TARGET OFFENSES.

12. In approximately mid-December 2021, CUNNINGHAM's large volume of firearm purchasing came to the attention of ATF and other law enforcement officials. By way of summary background, the investigation has indicated that CUNNINGHAM had, between approximately July of 2021 and January 5, 2022, purchased approximately 238 firearms.

13. The investigation has indicated that CUNNINGHAM stores firearms at his residence. On or about January 5, 2022, CUNNINGHAM voluntarily sat down with Your Affiant and other law enforcement to discuss his high-volume acquisitions, specifically that his high-volume acquisitions were of repeated type, manufacturer, and model of firearms. Your Affiant is aware from training and experience that these types of high-volume purchases in a short period of time, where the guns are of a similar type, manufacturer, and model, is indicative of straw purchases and/or firearms trafficking. During this interview CUNNINGHAM described himself as a firearm collector. He explained he was investing in firearms as a retirement investment and only periodically resold firearms from his "private collection" that he was no longer interested in. During this conversation CUNNINGHAM indicated that he stores his "private collection" in a large safe inside his garage located at his residence. Law enforcement explained to CUNNINGHAM that if he decides to make a profit selling his firearms in the future that he would need to apply for a Federal Firearms License (FFL). Following the interview, CUNNINGHAM forwarded law enforcement numerous photographs, which he indicated were from inside his

house, depicting various firearms located in safes.

14. Between the dates of on or about March 4 through on or about March 11, 2022, CUNNINGHAM purchased approximately sixty-five (65) firearms from the same FFL located in the Southern District of Ohio. Those firearms were purchased across three (3) different transactions. The purchases accounted for: ten (10) Taurus-manufactured, G3C model, 9mm caliber, semi-automatic handguns; twenty-four (24) SCCY Industries, model CPX-2, semi-automatic handguns; twenty-three (23) Glock-manufactured, semi-automatic handguns in various models and calibers; and eight (8) Smith and Wesson-manufactured, M&P 9 model, 9mm caliber, semi-automatic handguns. Again, through training and experience, Your Affiant is aware that an individual who engages in repetitive acquisition of similar firearms is an indicator of someone acquiring the firearms for resale.

15. On or about March 16, 2022, CUTLIP entered an FFL located in the Southern District of Ohio and purchased a total of sixty-seven (67) firearms between two transactions. One transaction accounted for six (6) Taurus-manufactured, model G3C, 9mm, semi-automatic, handguns. The second transaction accounted for a total of sixty-one (61) firearms. Of those sixty-one (61) firearms, nineteen (19) were Taurus-manufactured, model G3C, 9mm, semi-automatic handguns; forty (40) were SCCY Industries-manufactured, model CPX-2, 9mm, semi-automatic handguns; and two (2) were Ruger-manufactured, model 57, 57 caliber, semi-automatic handguns. Your Affiant knows through training and experience that these firearms are not a firearm model typically collected, given that they are viewed as items that are not hard to acquire. Through further investigation, investigators learned that CUTLIP transferred the firearms from her possession within hours of the purchase to T. RATHBURN.

16. On or about March 21, 2022, investigators spoke with the owner of the FFL where

5

CUTLIP completed her transaction. During the conversation with that FFL, investigators learned that CUTLIP's order for the sixty-seven (67) firearms was placed by another individual further identified as Brian CUNNINGHAM. CUNNINGHAM contacted the FFL to place the order for the firearms, provided CUTLIP's full name and address, and acted as a middleman between CUTLIP and the FFL. The FFL stated that once the order was complete, he/she notified CUNNINGHAM that the order was ready for pick-up, and soon thereafter CUTLIP came to the location to complete the purchase. The FFL stated that CUTLIP's transaction was approximately $9,030.00 and was paid entirely in cash provided by CUTLIP.

17. Continuing on or about March 21, 2022, investigators again spoke with the owner of the FFL and learned that CUNNINGHAM had placed an order approximately two weeks prior through another individual later identified as W. RATHBURN. The FFL stated he/she received a text message from CUNNINGHAM with a picture of handwritten notes that contained the firearm order with the name "Walter" written on it. Investigators located records that indicate W. RATHBURN had purchased approximately fifty-two (52) firearms between three (3) separate transactions on or about March 11, 2022. Of those fifty-two (52) firearms: thirty-six (36) were SCCY Industries-manufactured, model CPX-2, 9mm caliber, semi-automatic handguns; and sixteen (16) were Glock-manufactured, semi-automatic handguns in various models and caliber. Investigators learned that W. RATHBURN's firearm transactions came to a combined approximate total of $13,270. Investigators learned that, on one of the occasions, CUNNINGHAM accompanied both W. RATHBURN and T. RATHBURN to the FFL; and, after departing from the FFL, most of the firearms were then transferred to CUNNINGHAM with T. RATHBURN retaining some.

18. Your Affiant is aware from training and experience that the above-described

6

transactions bear strong indicators of illegal straw purchasers. By way of background, pursuant to federal law and regulation, the FFL is required to obtain a completed ATF Form 4473 (the "Firearms Transaction Record") from the actual purchaser of a firearm before the FFL can transfer or sell a firearm to any unlicensed person. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. ATF Form 4473 gathers a host of information about the purchaser, including information to determine if the purchaser may lawfully possess a firearm. FFLs also may not transfer a firearm to an unlicensed person without first conducting a background check through the National Instant Check System (NICS) and recording the information on the ATF Form 4473. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. The NICS process is run by the Federal Bureau of Investigation (FBI) and provides the mechanism through which FFLs determine whether a particular purchaser is prohibited from possessing firearms. Providing false or misleading information to an FFL in connection with the acquisition of a firearm, e.g., lying on the ATF 4473, is violation of federal law. 18 U.S.C. § 922(a)(6). Additional information asked on the ATF 4473 includes the following question: *"Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?"* A bold warning is also provided with this question: *"You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."* Marking yes to the above question, and then transferring the purchased firearms to the actual buyer, qualifies as an illegal straw purchase in violation of 18 U.S.C. § 922(a)(6).

19. In my training and experience, it is common for individuals who otherwise intend to divert the firearm(s) to criminal possession to use a straw purchaser to complete the retail transaction on their behalf or to acquire firearms from other unlicensed individuals. It is also common for straw purchasers to receive a benefit of some type—in this situation, a monetary

benefit—to assume the risk of purchasing the firearm. More specifically a "straw" purchase is described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended recipient or transferee of the firearm(s). Investigators learned that both CUTLIP and W. RATHBURN completed the ATF Form 4473 during their respective firearms purchases. During the continued investigation, investigators learned that CUNNINGHAM was seeking individuals who would pick up firearm orders for compensation of approximately $500.

20. On or about March 22, 2022, investigators learned that a firearm originally purchased by W. RATHBURN on or about March 11, 2022, was recovered by law enforcement officials in Rochester, New York. The time-to-crime recovery for this firearm is approximately ten (10) days. Your Affiant knows from training and experience that a 10-day time-to-crime is a short amount of time and is an indicator of firearms trafficking. Most individuals who purchase firearms retain them for extended periods, up to years in length. Therefore, whenever a firearm is recovered in a criminal offense shortly after it was purchased, it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm-trafficking scheme. Your Affiant also knows from training and experience that a shorter time-to-crime period (that is, anything under a year) for the firearm recovery is an indicator that the original purchaser was in fact a straw purchaser who knowingly transferred the firearm to another individual after the purchase. Moreover, relevant here, Your Affiant is further aware from training and experience that, when firearms are recovered outside of the original purchase state with a such a short time-to-crime, it is an indicator of conduct violative of 18 U.S.C. § 922(a)(5) (transfer of firearm(s) to an out-of-state resident).

21. On or about March 22, 2022, investigators executed a Federal search warrant at

8

CUNNINGHAM's residence. During the execution of the search warrant investigators learned that additional documents and items of evidence had been thrown away in a nearby dumpster. Investigators searched the dumpster and recovered two (2) receipt books that documented numerous firearms sales. One name observed in the receipt book was LORENZI and the second was "Apollo."[1] The investigation has indicated that LORENZI is a resident of the Cleveland, Ohio area. Additionally, investigators learned another purchaser was Anthony REDMOND, another resident of Cleveland, Ohio. Further related to LORENZI, REDMOND, and JACKSON, the investigation has demonstrated that all three individuals have, on occasion, traveled from Northern Ohio to the Columbus area to obtain firearms from both T. RATHBURN and/or CUNNINGHAM as part of the illegal activities outlined in this Affidavit. To that end, investigators have identified that LORENZI, REDMOND, and JACKSON have done so with regard to more than 116 firearms, to include the firearms recovered in New York. Investigators also recovered three (3) additional receipts that documented firearm purchases by REDMOND between the dates of March 5–14, 2022. When CUNNINGHAM and T. RATHBURN conducted their sale of firearms with LORENZI and REDMOND, LORENZI and REDMOND displayed an Ohio driver's license. The investigation has indicated that REDMOND is a prior convicted felon.

22. The investigation has also led to the review of separate cellular conversations between T. RATHBURN and LORENZI, as well as T. RATHBURN and JACKSON, which provide further evidence of the arrangements and purchases of the firearms. The text messages indicate, for example, that LORENZI, and others, were placing orders with T. RATHBURN and others for the purchase of a number of the firearms at issue, and then arranging for the transfer of

---

[1] Between the dates of March 24 and April 13, 2022, Investigators utilized multiple law enforcement and open-source databases in conjunction with the data collected from the Pen Register/ Ping Order associated with LORENZI's telephone, and other law enforcement officers to identify "Apollo" as Charles L. JACKSON (B/M: DOB: 10/XX/1994).

9

the firearms from T. RATHBURN to others associated with LORENZI. Both cellular telephone numbers utilized to communicate with T. RATHBURN were determined by investigators to be Voice Over IP (VOIP) and/or secondary text messaging applications and not originating from a cellular provider, all of which functioned to encrypt the communications. Your Affiant knows through training and experience that the use of secondary texting and VOIP telephone numbers is a method often used to conceal identity and, depending on the circumstances, is a step taken to elude law enforcement detection.

23. Moreover, the above-described text messages between T. RATHBURN and LORENZI indicate that LORENZI himself and others have traveled from Northern Ohio to the Southern District of Ohio to pick up firearms. The investigation has further indicated that LORENZI did so driving a dark blue Dodge Charger.[2]

24. Also relevant here, the investigation has indicated that additional firearms related to the allegations in this Affidavit have been recovered in the State of New York. In or around March of 2022, a total of two undercover purchases of firearms and a search warrant of a residence were conducted by law enforcement in the State of New York, which yielded the seizure of multiple firearms traced back to purchases made by W. RATHBURN, T. RATHBURN and/or CUTLIP.

25. Investigators conducted a query of ATF databases, which returned negative results for CUNNINGHAM, CUTLIP, W. RATHBURN,, T. RATHBURN, JACKSON, LORENZI, or REDMOND having any current affiliations related to ownership or licensing with other FFLs.

26. From on or about March 30 through on or about March 31, 2022, investigators

---

[2] Further investigation by law enforcement officials were able to determine Martino LORENZI is the owner of a dark blue Dodge Charger bearing Ohio license plate DEUCE 17, with a registered address of 3613 Hildana Road, Cleveland, Ohio.

conducted surveillance at several locations in the Greater Cleveland area in an attempt to locate a dark blue Dodge Charger bearing Ohio license plate DEUCE17, known to be operated by Martino LORENZI. On or about March 30, 2022, shortly after beginning surveillance, the **TARGET VEHICLE** was observed backing into the driveway of 3613 Hildana Road. The driver of the vehicle was observed exiting the driver's door carrying what appeared to be grocery style bags into the residence using the door on the North side of the residence, which is directly off the driveway. After a while, a black male, fitting the physical description of Martino LORENZI, exited the residence and entered the driver's seat of the **TARGET VEHICLE**. Mobile surveillance began of the **TARGET VEHICLE** and within a short period of time, investigators were able to confirm LORENZI was operating the **TARGET VEHICLE**. On or about March 31, 2022, investigators conducted additional surveillance, during which they observed the **TARGET VEHICLE** parked in the driveway of 3613 Hildana Road. Investigators observed LORENZI exit the residence and enter the driver's seat of the **TARGET VEHICLE**. Investigators conducted mobile surveillance of LORENZI until he returned to his residence.

27. More recently, on April 12, 2022, ATF S/A Penfield obtained a federal search warrant for a GPS tracker on the **TARGET VEHICLE**. The warrant was signed by United States Magistrate Judge William H. Baughman Jr. for the Northern District of Ohio. On April 16, 2022, ATF Special Agents from the Cleveland Field Office executed the tracker warrant by installing a GPS tracker unit on the **TARGET VEHICLE** at LORENZI's residence located at 3613 Hildana Road, Shaker Heights, Ohio 44120.

28. On April 20, 2022, investigators conducted surveillance at several locations in the Greater Cleveland area. Throughout surveillance, investigators observed LORENZI operating the dark blue Dodge Charger driving around the Greater Cleveland area. At approximately 4:00PM,

investigators observed the Dodge Charger backed into the driveway of the LORENZI's residence and LORENZI standing at the trunk of the Charger.

29. Between the dates of approximately March 25, 2022, and May 26, 2022, LORENZI with others coordinated the purchase of sixteen (16) SCCY Industries, model CPX-2, 9mm, semi-automatic handguns for $5,200. This coordination included text messages and a telephonic conversation with an ATF SA acting in an undercover (UC) capacity to arrange the purchase for May 26, 2022. On May 25, 2022, your affiant observed LORENZI operating the **TARGET VEHICLE** in and around the area of his listed residence in Shaker Heights, Ohio.

30. In the early morning of May 26, 2022, the GPS tracker affixed to the **TARGET VEHICLE** indicated that the vehicle departed from Hildana Avenue and traveled to the area of Stickney Avenue, which is where investigators have identified a residence associated to JACKSON. Soon after, the GPS tracker data indicated the vehicle was at Huntington Bank located on Ridge Road, Cleveland, OH. The TARGET VEHICLE then traveled south on I-71 from Cleveland, OH to Columbus, OH. At approximately, 10:28AM investigators observed the TARGET VEHICLE arrive at the location provided by the ATF UC. Surveillance units observed that LORENZI was operating the vehicle and was accompanied by two other individuals, later identified as JACKSON and Jadden BEDELL.

31. Continuing on May 26, 2022, JACKSON, LORENZI, and BEDELL engaged with the ATF UC SA's and exchanged U.S. currency for the previously arranged purchase of sixteen (16) SCCY Industries firearms. Both JACKSON and BEDELL wrote information on a Bill of Sale document provided by the ATF UC SA. After the transaction, LORENZI and JACKSON were arrested and BEDELL was temporarily detained. The **TARGET VEHICLE** was towed to a secure location and is being held pending the receipt of a search warrant.

32. Based on the allegations laid out in this Affidavit, the investigation indicates that LORENZI, REDMOND, JACKSON and others, are working with CUNNINGHAM, T. RATHBURN, and others, to purchase firearms in the Southern District of Ohio. Some of those firearms are then transmitted to LORENZI, REDMOND, JACKSON, and others. Some of those firearms are then transferred to Northern Ohio and outside the State of Ohio, namely, to New York.

33. Your Affiant knows based on training and experience that individuals who possess firearm and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition. Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearms brochures or owner's manuals, records of sale or acquisition of firearms, firearms magazines, and holsters.

34. Your Affiant knows based on training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store those items—including firearms and ammunition—in their homes or cars, so that the firearms and ammunition are easily accessible. Your Affiant is also aware that firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time. Your Affiant further knows based upon training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store information related to those items (e.g., receipts documenting the purchase or re-sale of the items) on their computers or cellular phones.

35. Your affiant knows that a person who purchases firearms may store those items, documents related to the acquisition of the firearms, or other related material in their vehicle or at

any associated residence. It is reasonable that the **TARGET VEHICLE** may contain evidence that will aid in developing further evidence of the conspirators' firearm trafficking activities, including further establishing a pattern of LORENZI, REDMOND, and JACKSON, and others unknown in their firearm trafficking activities.

## CONCLUSION

36. Based upon the information set forth in this Affidavit, I submit there is probable cause to believe that the individuals identified as Martino D. LORENZI, Anthony D. REDMOND, and Charles L. JACKSON, and others have violated the following federal laws: 18 U.S.C. § 922(a)(5), that is, transferring a firearm to an out-of-state resident; 18 U.S.C. § 922(a)(1)(A), that is, engaging in the business of dealing in firearms without a license; 18 U.S.C. § 2, that is, aiding, abetting, counseling, commanding, or soliciting a criminal act; and 18 U.S.C. § 371, that is, two or more persons conspiring to commit any offense against the United States. Your Affiant further submits there is probable cause to believe that the property and premises located in the **TARGET VEHICLE** contains evidence and instrumentalities of violations of the TARGET OFFENSES, namely: evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; property and materials designed for use, intended for use, or used in committing violations of those statutes.

37. Accordingly, Your Affiant respectfully requests this Court issue a warrant authorizing the search of the **TARGET VEHICLE** currently located in Columbus, OH and authorization to search for and seize the items described in Attachment A hereto, incorporated herein by reference.

38. *Manner of execution.* Because this warrant seeks only permission to search a vehicle already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

39. Your Affiant further requests that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Your affiant believes that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activity, the entire extent of which is not known at this time. Based upon my training and experience, and information I have received from ATF and other law enforcement agents, your affiant knows that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., post them publicly online through different forums. Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness

Teresa Petit
Special Agent
Bureau of Alcohol Tobacco, Firearms and Explosives

This Affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on this 27th day of May 2022.



Elizabeth A. Preston Deavers
United States Magistrate Judge

## ATTACHMENT A

1.　　Based upon the above information, Your Affiant has probable cause to believe that now contained within the 2014 dark blue Dodge Charger bearing Ohio plate DEUCE17, within the Southern District of Ohio, are items as described below in attachment A, which constitute evidence of the following federal laws: 18 U.S.C. § 922(a)(5), that is, transferring a firearm to an out-of-state resident; 18 U.S.C. § 922(a)(1)(A), that is, engaging in the business of dealing in firearms without a license; 18 U.S.C. § 2, that is, aiding, abetting, counseling, commanding, or soliciting a criminal act; and 18 U.S.C. § 371, that is, two or more persons conspiring to commit any offense against the United States, to include, but are not limited to:

(a) Ammunition and firearms such as pistols, revolvers, or those items similar in type to the recovered firearms and or records of firearms purchased on or before March 2022 through April 26, 2022, as defined by 18 USC § 921;

(b) Any and all documents, records, boxes or indicia related to the purchase, sale, transfer or transportation of firearms and/or ammunition;

(c) Log books, records, payment receipts, notes, and/or computer lists, ledgers, sales tags and other papers relating to the purchasing, ordering, processing, storage, and distribution of firearms including all records of income and expenses;

(d) Electronic equipment, such as pagers, telephone answering machines, telephone caller identification boxes, video and audiocassette tapes, fax machines, electronic media (computers, floppy disk, disks etc), and any stored electronic data and/or communications contained therein;

(e) Cellular telephone(s) and/or portable cellular telephone(s) and any stored electronic data and/or communications contained therein;

(f) Indicia of occupancy, rental and/or ownership of **TARGET VEHICLE**, including but not limited to bills, cancelled envelopes, keys, deeds, purchase lease agreements, contracts, titles and vehicle registrations;

(g) The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained and

(h) Any other items which constitute evidence of crimes of the TARGET OFFENSES.